**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE PATRICIO BOER-SEDANO,
                    *Petitioner,*

              v.

ALBERTO R. GONZALES,* Attorney
General,
                    *Respondent.*

No. 03-73154

Agency No.
A76-335-880

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submission deferred February 3, 2005
Submitted June 21, 2005**
San Francisco, California

Filed August 12, 2005

Before: Dorothy W. Nelson, William A. Fletcher, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge D.W. Nelson

---

*Alberto Gonzales is substituted for his predecessor, John Ashcroft, as
Attorney General. Fed. R. App. P. 43(c)(2).

**This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Angela M. Bean, Angela M. Bean & Associates, Oakland, California, for the petitioner.

Peter D. Keisler, Margaret J. Perry, and Mary Jane Candaux, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

D.W. NELSON, Circuit Judge:

Jose Patricio Boer-Sedano, a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals' (BIA's) summary affirmance of the Immigration Judge's (IJ)

denial of his requests for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We grant his petition for review in part, reverse the BIA's decision on his asylum claim and remand for the Attorney General to exercise his discretion on this claim. We also remand to the BIA to reevaluate Boer-Sedano's withholding of removal and CAT claims in light of this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Boer-Sedano last entered the United States on September 6, 1990, as a nonimmigrant visitor with authorization to remain in the United States for six months. On November 7, 1997, Boer-Sedano was placed in removal proceedings for overstaying this visa. On November 15 and 20, 2001, during a merits hearing before the IJ, Boer-Sedano conceded his removability based on overstay. However, he sought asylum, withholding of removal, and protection under the CAT. Because the IJ found Boer-Sedano to be credible, the following facts to which he testified, including the reasonable inferences to be drawn from these facts, must be accepted as true. *See Damon v. Ashcroft*, 360 F.3d 1084, 1086 n.2 (9th Cir. 2004); *Zheng v. Ashcroft*, 332 F.3d 1186, 1189 n.4 (9th Cir. 2003).

Boer-Sedano was born in Tampico, a small Mexican city, and is a homosexual man living with Acquired Immune Deficiency Syndrome (AIDS). Boer-Sedano testified that he has known he was gay since the age of seven and that he could not live "a gay life openly in Mexico" because of how he would be treated if his sexuality were known. Despite his attempts to conceal his sexuality, others could perceive it and Boer-Sedano was ostracized by his family, friends, and co-workers on this basis. His family refused to allow him to interact with other family members or his friends, fearing that Boer-Sedano would be a "bad influence" on them. Boer-Sedano was also harassed at his Tampico workplace because of his sexuality. Coworkers called him a "*maricon*" ("faggot") and tried to convince another department head to accept him,

but the department head refused because he did not want "queers" working in his department.

Boer-Sedano's asylum claim centers on his interactions, in 1988, with a "high-ranking police officer." Late one evening, the officer stopped Boer-Sedano and a friend in the town square and arrested and detained the two men for twenty-four hours. The officer told the two men they were being held for being gay and because he believed they were on their way to a hotel together. Boer-Sedano correctly testified that being gay is not a crime in Mexico. Over the next three months, the same police officer stopped Boer-Sedano on nine separate occasions. On each occasion, the officer ordered Boer-Sedano into his official police car, drove to a dark location, and forced Boer-Sedano to perform oral sex on him.

To get Boer-Sedano to comply, the officer told Boer-Sedano that he knew "where [he] lived and where [he] worked" and would tell others that Boer-Sedano was a homosexual if he resisted. After each time Boer-Sedano performed oral sex on the officer, the officer would hit Boer-Sedano's head and arms and insult him by saying that he "didn't know how to [perform oral sex] well." The officer also warned Boer-Sedano that "if he killed [him] and threw [his] body somewhere no one would ask about [him], . . . because . . . [he] was a gay person" and the officer would not be committing murder, but simply "cleaning up society." During one encounter with this officer, the officer "pulled out his hand gun and put a bullet in the chamber and rolled the cylinder and put the gun to [Boer-Sedano's] head and said 'if you're lucky this is going to be your fate.' "

After these events, Boer-Sedano quit his job and "didn't go out of [his] house]" because he was afraid the officer would find him and continue this abuse. Seeking safety, Boer-Sedano fled to Monterrey, Mexico. For about a year, Boer-Sedano lived in Monterrey, worked at an underground gay discotheque, and began to apply for a visa to enter the United

States. His life in Monterrey remained difficult and he could not openly identify as a homosexual. In April 1989, Boer-Sedano was granted a U.S. visitor's visa, but he testified that he did not immediately use the visa to enter the United States because he wanted to save money to assist in his permanent relocation.

Around the time of regional gubernatorial elections, approximately in July 1989, the local police conducted many raids, including one on Boer-Sedano's workplace. The police arrested the customers and the staff who were performing a strip show and closed down the bar. Boer-Sedano testified that the police asked him if he was a homosexual and that he denied his homosexuality to avoid arrest. After this raid Boer-Sedano testified that he was "very, very much afraid" because he feared that the officers were going to assault him and "the same story [was] going to repeat itself." Boer-Sedano testified that after the raid he felt he would not be safe living in Mexico as a gay man. After the raid, Boer-Sedano acquired money for his resettlement by traveling for a period of over one year between the United States and Mexico to purchase goods and resell them in Mexico.

Boer-Sedano fled to San Francisco in September 1990 and has not returned to Mexico. In 1992, he was diagnosed with the Human Immunodeficiency Virus (HIV) and later with AIDS.[1] For the last ten years, Boer-Sedano has worked as a waiter and a bus boy at a hotel, which provides him with health insurance that covers his AIDS treatment, including a combination of six drugs. Over the course of his treatment, Boer-Sedano has developed immunity to some medications, necessitating changes to new drugs. His doctor testified via phone and submitted a letter stating that Boer-Sedano "will require undoubtedly early access to new anti-retroviral agents" in the future. Boer-Sedano testified that he would not

---

[1]Before coming to the United States, Boer-Sedano tested negative for HIV.

be able to get a job in Mexico because he is a homosexual man with AIDS. Without a job, Boer-Sedano testified that he could not afford health insurance or the drugs he currently takes to maintain his health. He also testified that the drugs he uses are not available in Mexico and provided corroborating evidence to support this claim.

On November 20, 2001, the IJ found Boer-Sedano ineligible for asylum because he failed to establish past persecution on account of a protected basis. The IJ concluded that the sex acts that Boer-Sedano was forced to perform by the police officer were simply "a personal problem" he had with this officer. The IJ further concluded that Boer-Sedano had not established a well-founded fear of persecution because "he was not subject to systematic persecution which prevented him from living his chosen life style, . . . particularly after he moved to Monterrey." The IJ also denied Boer-Sedano's withholding of removal and CAT claims. Boer-Sedano timely appealed to the BIA, which on August 4, 2003, affirmed the IJ without opinion. Boer-Sedano timely petitioned for review.

## STANDARD OF REVIEW

We review the BIA's decision on whether a petitioner established eligibility for asylum under the substantial evidence standard. *Njuguna v. Ashcroft*, 374 F.3d 765, 769 (9th Cir. 2004). "This standard limits reversals of BIA decisions to situations where the Petitioner presented evidence so compelling that no reasonable factfinder could fail to find that Petitioner has not established eligibility for asylum." *Ali v. Ashcroft*, 394 F.3d 780, 784 (9th Cir. 2005) (internal quotations and brackets omitted). Here, because the BIA affirmed without opinion, we review the IJ's decision as the final agency determination. 8 C.F.R. § 1003.1(e)(4); *see also Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849 (9th Cir. 2003).

*DISCUSSION*

## I.   Asylum Claim

### A.   Boer-Sedano Established Past Persecution

**[1]** To qualify for asylum, Boer-Sedano must show that he is a refugee or one "who is unable or unwilling to return to . . . [his native] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b). The IJ rejected Boer-Sedano's argument that he was persecuted on account of his membership in the particular social group of male homosexuals in Mexico because she found that this did not constitute a particular social group for asylum purposes. We recently held that "alien homosexuals" constitute a particular social group. *Karouni v. Gonzales*, 399 F.3d 1163, 1172 (9th Cir. 2005). Therefore, the BIA erred in affirming the IJ's conclusion that homosexual men in Mexico could not form the basis of a social group claim.

**[2]** Whether particular acts constitute persecution for asylum purposes is a legal question, which we review de novo. *Hernandez-Montiel v. INS*, 225 F.3d 1084, 1097 (9th Cir. 2000). We have held that sexual assault, including forced oral sex, may constitute persecution. *Id.* Therefore, there can be no doubt that the nine sex acts that Boer-Sedano was forced to perform rise to the level of persecution.

**[3]** "[W]e have [also] consistently held that death threats alone can constitute persecution." *Navas v. INS*, 217 F.3d 646, 658 (9th Cir. 2000). The IJ's minimization of the death threat Boer-Sedano received from the police officer may account for her failure to recognize that he suffered persecution. When counsel referred to the death threat the officer issued to Boer-Sedano during a "game" of Russian Roulette, the IJ warned her to "classify [the incident] as it was rather than a death

threat." We fail to see how holding a loaded gun to Boer-Sedano's head and threatening to pull the trigger was anything but a death threat, especially in light of the officer's statement that Boer-Sedano would be "lucky" if there was a bullet in the chamber and a separate statement that if the officer killed him it would be considered a good thing by society because he was gay. Accordingly, the IJ erred as a matter of law by concluding that Boer-Sedano had not been persecuted.

[4] To establish past persecution, Boer-Sedano must also show that the persecution he suffered was "inflicted either by the government or by persons or organizations which the government is unable or unwilling to control." *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir. 1997). Boer-Sedano testified that the police officer who persecuted him was "high ranking." During Boer-Sedano's first encounter with the officer, the officer arrested and detained Boer-Sedano and his friend for 24 hours because the officer suspected that they were gay and were going to a hotel together. Police officers are the prototypical state actor for asylum purposes. *See, e.g.*, *Hernandez-Montiel*, 225 F.3d at 1097 (noting that petitioner's assaults by the police demonstrated that he "is at risk of [being] persecut[ed] [by] the very agency which purports to protect him by law"). These persecutory acts by a single governmental or quasi-governmental official are sufficient to establish state action. *See id.* at 1097-98; *Lazo-Majano v. INS*, 813 F.2d 1432, 1434 (9th Cir. 1987).

[5] Although the IJ faulted Boer-Sedano for not reporting the persecution he suffered to the police, we generally consider whether an asylum applicant reported persecution to the police only when a non-governmental actor is responsible for the persecution. *Baballah v. Ashcroft*, 367 F.3d 1067, 1078 (9th Cir. 2004) (noting that "when the government is responsible for persecution, the [state actor] prong of our asylum inquiry is satisfied without further analysis. As a result, no inquiry into whether a petitioner reported the persecution to police is necessary."). Moreover, Boer-Sedano explained why

he did not report the incidents: he was afraid. This fear was reasonable considering that the police officer was high rank-ing and arrested and detained Boer-Sedano on a previous occasion without any intervention from other government officials.

[6] The IJ concluded that the officer's persecution of Boer-Sedano was not on account of his status as a homosexual. The evidence in the record does not support this conclusion. The police officer initially arrested Boer-Sedano only *after* asking him if he was gay and only after seeing him with a friend, whom the officer concluded was his gay partner. Furthermore, the officer's words during the assaults make clear that he was motivated by Boer-Sedano's sexuality. *See, e.g.*, *Borja v. INS*, 175 F.3d 732, 735-36 (9th Cir. 1999) (en banc) (holding that petitioner's credible testimony that she was assaulted by members of a violent, anti-government group only after tell-ing them that she opposed their practices established past per-secution on account of a protected ground). In addition, when, as here, "there is no evidence of a legitimate . . . purpose for a government's harassment of a person" a presumption arises "that the motive for the harassment is on account of a pro-tected ground." *Karouni*, 399 F.3d at 1174-75 (internal quota-tions, citation, and brackets omitted). Accordingly, the record compels the conclusion that Boer-Sedano is a member of the social group consisting of homosexual men in Mexico and that he was persecuted on account of this status.

## B. *Boer-Sedano Has a Well-Founded Fear of Persecution*

[7] Because Boer-Sedano has established past persecution, he is presumed to have a well-founded fear of future persecu-tion. 8 C.F.R. § 1208.13(b)(1). According to the regulations, the burden then shifts to the government to show, by a pre-ponderance of the evidence, that either there has been a "fun-damental change in circumstances," such that Boer-Sedano no longer has a well-founded fear, or that he could "avoid future persecution by relocating to another part of [Mexico] . . . , and

under all the circumstances, it would be reasonable to expect [him] to do so." *Id*. at § 1208.13(b)(1)(i)(A)-(B). The IJ concluded that Boer-Sedano did not have a well-founded fear of persecution if returned to Mexico because: (1) the country conditions indicate that "there is no evidence of systematic official persecution of homosexuals," (2) relocation was possible, and (3) Boer-Sedano's "fear of persecution is completely alleviated by his repeated voluntary return [trips] to Mexico."

### 1.  *Changed Country Conditions*

**[8]** We have repeatedly held that the government has not rebutted the presumption of a well-founded fear of persecution when, as is the case here, evidence in the country report indicates that persecution similar to that experienced by the petitioner still exists. *Agbuya v. INS*, 241 F.3d 1224, 1231 (9th Cir. 2001); *Kataria v. INS*, 232 F.3d 1107, 1115 (9th Cir. 2000). The IJ attempted to limit these findings in the country report by stating that the majority of the anti-gay violence reported in Mexico was against transvestites and that Boer-Sedano is "a low-profile, non-transvestite gay man" who "has never been openly identified as a homosexual except by the one police officer." This statement misrepresents the record, as it is beyond doubt that Boer-Sedano's homosexuality was known to his family, coworkers, and the officer who assaulted him. Moreover, the two country reports in the record do not indicate that the violence against homosexuals is largely limited to violence against transvestites. The 1997 country report concluded that "violence against homosexuals is not uncommon, especially in establishments or areas frequented by gays." 1997 Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *Mexico: Profile of Asylum Claims & Country Conditions* 6, *reprinted in* Administrative Record (AR) at 272. In addition, the 2001 country report, which was also in the record, indicates that violence against homosexuals continues to be a problem in Mexico and does not limit this

violence as targeted at transvestites. The 2001 country report states:

> Amnesty International has reported that homosexual men and women are likely to be victims of abuse and violence. In its 1999 annual report, the Citizen's Commission Against Homophobic Crimes reported that on average three murders are committed because of sexual orientation per month, and . . . that the police fail to investigate these crimes seriously.

2001 U.S. Dep't of State, *Mexico: Country Reports on Human Rights Practices: 2000* 17, *reprinted in* AR at 292. Boer-Sedano also submitted newspaper articles showing that the Mexican police have committed numerous violations of the rights of sexual minorities in Mexico, including beatings and sexual abuse. *See, e.g.*, *Tijuana Police Harass Gays in Park* (1998) (newspaper article detailing abuses by police against homosexuals), *reprinted in* AR at 335; *Lesbians and Gays, Victims of the Police* (1997) (same), *reprinted in* AR at 420; Sam Dillon, *Gay Rights, Prejudice and Politics in Mexico*, *New York Times* (1997) (same), *reprinted in* AR at 426-29. Based on the substantial evidence in the record, we hold that the government failed to rebut the presumption of a well-founded fear of persecution based on changed country conditions.

### 2. Relocation Within Mexico

**[9]** The IJ found that Boer-Sedano could relocate safely in Mexico because he did not prove a risk of countrywide persecution. However, because Boer-Sedano established past persecution, the burden was on the INS to show, by a preponderance of the evidence, that relocation was reasonable. 8 C.F.R. § 1208.13(b)(1)(ii). Cutting against such a finding is the evidence in the country report showing that violence against homosexuals is not limited to any one area and the fact that Boer-Sedano suffered persecution at the hands of a

government official, which raises a presumption that "a threat exists nationwide" and that "internal relocation is unreasonable." *Melkonian v. Ashcroft*, 320 F.3d 1061, 1070 (9th Cir. 2003); *see also* 8 C.F.R. § 1208.13(b)(3)(ii). To rebut this presumption of a nationwide threat, the relevant regulation requires the IJ to consider the following nonexhaustive factors, to decide whether any of them made relocation unreasonable: "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and family ties." 8 C.F.R. § 1208.13(b)(3).

[10] The IJ failed to consider the "serious harm" Boer-Sedano would face if he was relocated within Mexico or the "social and cultural constraints," including his health status, which made such relocation unreasonable. *Id.* We have interpreted this regulation as precluding relocation when a petitioner's age, limited job prospects, and lack of family or cultural connections to the proposed place of relocation militate against a finding that relocation would be reasonable. *See Knezevic v. Ashcroft*, 367 F.3d 1206, 1214-15 (9th Cir. 2004); *Melkonian*, 320 F.3d at 1071. However, we have not yet had occasion to consider when a petitioner's health status, in combination with other social and cultural constraints, may make relocation unreasonable.

The record reflects that Boer-Sedano would face significant social and cultural constraints as a gay man with AIDS in Mexico, as hostility towards and discrimination against HIV/AIDS patients is common in Mexico. *Tijuana AIDS Hospice Shut Down by City*, (1999), *reprinted in* AR at 309 (describing closure of AIDS hospice by city and transfer of patients to a hospital that does not provide HIV drugs and noting allegations of abuse of patients at the hospice); *International Gay and Lesbian Human Rights Commission, Mexican Refugees in 1990's Canada: Beyond the Limits of Repression* 62, 65,

*reprinted in* AR at 328, 331 (noting numerous human rights complaints based on neglect and denial of treatment to HIV patients as well as businesses' manipulation of physical exams to refuse to hire or to terminate employees with HIV); and Victor Janoff, *Life Under Siege: In Mexico, do gay people face discrimination, extortion and murder?*, *Simon Fraser News* (1996), *reprinted in* AR at 433 ("Mexican homosexuals are under siege, demoralized by rampant police brutality and mistreatment of people with AIDS.").

**[11]** In addition, the evidence reveals that Boer-Sedano's health status would make relocation unreasonable. Boer-Sedano's doctor testified that Boer-Sedano's treatment has been complicated by his resistance to virtually all licensed AIDS medications. Letter from Boer-Sedano's doctor, *reprinted in* AR at 473; *see also* a subsequent letter from this doctor, *reprinted in* AR at 302. In response, Boer-Sedano's doctor prescribed investigational medications, which he testified are unavailable — even for purchase — in Mexico. *Id.*; AR 253 (doctor's testimony). Without these drugs, Boer-Sedano's doctor testified that his condition would "rapidly deteriorate." AR 253. Boer-Sedano produced evidence to corroborate the doctor's testimony that the AIDS drugs he takes are unavailable in Mexico. *See* Dana Calvo, *Less Help for Mexicans With AIDS*, *Associated Press* (1997), *reprinted in* AR at 375-76 (article describing scarcity of AIDS drugs in Mexico); *Scarcity in IMSS* (1998), *reprinted in* AR at 378 (same); and *Tijuana AIDS Clinic Faces Drug Shortage* (1996), *reprinted in* AR at 431 (same). Boer-Sedano also testified that his status as a homosexual with AIDS would make it impossible to find a job to provide health insurance or money to pay to import the needed drugs from elsewhere. We hold, therefore, that after considering the cumulative evidence on the social and cultural constraints Boer-Sedano would face as a homosexual man in Mexico, his current health, and the likelihood that serious harm would come to him if forced to relocate to Mexico where he could not obtain his required medication, no reasonable factfinder could conclude that the

INS has carried its burden of showing that such relocation was reasonable.

### 3.  Return Trips

**[12]** Despite Boer-Sedano's testimony that the purpose of his trips between the United States and Mexico was to limit his time in Mexico while he gathered enough income to flee permanently, the IJ concluded that these trips rebutted the presumption of a well-founded fear of persecution. According to our precedent, return trips can be considered as one factor, among others, that rebut this presumption. *See Belayneh v. INS*, 213 F.3d 488, 491 (9th Cir. 2000) (determining that the presumption was rebutted when the applicant made three return trips, there had been two favorable changes in government, fifteen years had passed between the past persecution and the asylum request, and there was no nexus between the spouse's persecution and the applicant's fear). We have never held that the existence of return trips standing alone can rebut this presumption. In light of the evidence of continuing persecution of homosexuals in Mexico, no reasonable factfinder could find that Boer-Sedano's return trips alone demonstrate a fundamental change in circumstances sufficient to show that Boer-Sedano no longer has a well-founded fear of persecution. We hold that the IJ erred in finding to the contrary. For these reasons, we conclude that Boer-Sedano is statutorily eligible for asylum and remand for an exercise of discretion.

## II.  Withholding of Removal Claim

**[13]** Relief under withholding of removal is mandatory if the petitioner establishes that his "life or freedom would be threatened" in the country to which he would be removed on account of one of the five protected grounds. 8 U.S.C. § 1231(b)(3)(A). The standard of proof required to establish eligibility for withholding of removal is higher than the standard for establishing eligibility for asylum. *Compare INS v. Stevic*, 467 U.S. 407, 424 (1984) (standard under former with-

holding statute) *with INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987) (asylum standard). Because Boer-Sedano established past persecution, a presumption arises that his "life or freedom would be threatened in the future" if he was removed to Mexico. *See* 8 C.F.R. § 1208.16(b)(1); *Hoque v. Ashcroft*, 367 F.3d 1190, 1198 (9th Cir. 2004). Precisely the same restrictions on rebutting the presumption apply in the withholding context as in the asylum context. 8 C.F.R. § 1208.16(b)(1). The IJ concluded that because Boer-Sedano failed to establish past persecution for asylum, he could not satisfy the higher standard for withholding of removal. Because we conclude that Boer-Sedano is statutorily eligible for asylum, we remand to the BIA to consider in the first instance Boer-Sedano's withholding of removal claim in light of this presumption. *See Ali*, 394 F.3d at 791.

## III. *Convention Against Torture Claim*

**[14]** To obtain relief under the CAT an applicant must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The regulations interpreting the CAT define torture as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . punishing him or her for an act he or she or a third person has committed or is suspected of having committed, . . . or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of . . . a public official or any person acting in an official capacity.

*Id*. at § 1208.18(a)(1). Boer-Sedano has not presented evidence that compels any reasonable factfinder to determine that the IJ erred in denying him relief under the CAT. Accord-

ingly, we affirm the IJ's determination that he is ineligible for relief under the CAT.

## *CONCLUSION*

The petition for review is granted in part, and the case is remanded for the Attorney General to exercise his discretion over Boer-Sedano's asylum claim and for further consideration of Boer-Sedano's withholding of removal claim. We also affirm the IJ's denial of Boer-Sedano's application for relief under the CAT.

**PETITION GRANTED in part, REMANDED in part, and DENIED in part.**