**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE LUIS BARRIOS-AGUILAR, | No. 06-70010 |
| Petitioner, | Agency No. A73-910-092 |
| v. | |
| ERIC H. HOLDER, ATTORNEY GENERAL, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 6, 2010
Pasadena, California

Before: CLIFTON and BYBEE, Circuit Judges, and KORMAN, District Judge.**

Jose Luis Barrios-Aguilar, a Guatemalan native, petitions for review of a

decision of the Board of Immigration Appeals ("BIA") adopting and affirming the

order of the Immigration Judge ("IJ") denying his application for asylum, withholding

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* The Honorable Edward R. Korman, Senior United States District Judge, Eastern District of New York, sitting by designation.

of removal, and protection under the Convention Against Torture.

To qualify for asylum, petitioner must establish sufficient persecution "on account of" his membership in a statutorily protected class. *See* 8 U.S.C. § 1101(a)(42)(A). If he establishes that he suffered past persecution, then a presumption arises that he also has a well-founded fear of future persecution, and the government bears the burden of rebutting this presumption by a preponderance of evidence. *See* 8 C.F.R. § 1208.13(b)(1) (2005). To show past persecution, petitioner must demonstrate "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control." *Navas v. INS*, 217 F.3d 646, 655–56 (9th Cir. 2000) (footnotes omitted). In the absence of past persecution, petitioner must prove a well-founded fear of future persecution, which requires a fear that is both subjectively genuine and objectively reasonable. *See Mgoian v. INS*, 184 F.3d 1029, 1035 (9th Cir. 1999).

I.

We presume familiarity with the background of the case. Briefly, petitioner entered the United States in 1989 at the age of 15 soon after several men attacked and threatened him on two separate occasions because he is homosexual. The same men also came to his parents' home in search of information about him and brutally

2

attacked his father. Petitioner's immediate family ultimately received asylum in Canada based on the persecution they suffered in Guatemala.

The IJ found that petitioner suffered persecution, which included "persecution of his father as derivative persecution of himself." He also determined that the persecution was "on account of" petitioner's membership in a protected class because, "as a homosexual the [petitioner] is a member of a particular social group that is protected," and "the motive of the persecution appears related to [his] homosexuality." However, the IJ found that petitioner had not established the third requirement for past persecution—that the Guatemalan government was unable or unwilling to control the persecution. The IJ explained that petitioner "d[id] not really put the government to the test" because he never alerted the police to the persecution, "and [petitioner's] own documents do not demonstrate that such a move would be futile." In adopting the IJ's decision, the BIA agreed that petitioner "has not shown that the government persecuted homosexuals or that it was unable or unwilling to control those who persecuted homosexuals."

We review the IJ's factual findings for substantial evidence. *Aguilar Gonzales v. Mukasey*, 534 F.3d 1204, 1208 (9th Cir. 2008). To reverse the IJ's determination that an applicant is not eligible for asylum, "we must find that the evidence not only *supports* that conclusion, but *compels* it." *INS v. Elias-Zacarias*, 502 U.S. 478, 481

& n.1 (1992).

## II.

We first consider the issue of whether petitioner established past persecution. This issue turns on the third requirement for past persecution—whether the persecution was "committed by the government or forces the government is either unable or unwilling to control." *Navas*, 217 F.3d at 655–56. When non-government actors are responsible for the persecution, courts look to whether the applicant reported the persecution to the police and whether the police responded to control the behavior. *See Baballah v. Ashcroft*, 367, F.3d 1067, 1078 (9th Cir. 2004). However, an applicant "need not have reported that persecution to the authorities if he can convincingly establish that doing so would have been futile or [would] have subjected him to further abuse." *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006). Indeed, we have recognized that a reporting requirement would be particularly "troubling" when evidence documents police abuse toward similarly situated members of a culturally subjugated group, such as men with alternative sexual identities in Latin American, and when cases involve generally under-reported crimes, such as rape. *See Ornelas-Chavez*, 458 F.3d at 1057; *Reyes-Reyes v. Ashcroft*, 384 F.3d 782, 789 n.3 (9th Cir. 2004).

In this case, the three attacks were never reported to the police and petitioner

4

did not present other evidence that the police were aware of the incidents. Nevertheless, the record evidence indicates that petitioner and his family members did not report the incidents because they justifiably believed that doing so would be futile and might expose them to further harm.

First, petitioner and his family members did not know the attackers' affiliation and feared the men were members of either the Guatemalan government or the Guatemalan guerrillas. Indeed, the assailants were violent and persistent. They attempted to rape petitioner during the first attack and kidnap him during the second attack. They threatened petitioner with future harm during both attacks on him, first warning him that he "could run but eventually they would get [him]", and second warning that if they ever saw him again they would put a bullet in his head. Although petitioner suffered only minor injuries, petitioner's father required an amputation and three months recovery in the hospital and he lost substantial use of his hand. During the attack on petitioner's father, the assailants threatened to shoot petitioner's handicapped brother unless petitioner's mother remained silent. When petitioner's father was brought to the hospital, physicians hid him in a secret room fearing that the assailants would return to "finish up the killing." Petitioner speculated that if someone had reported the attacks to the police, the assailants would "probably come back and kill [that person]." Accordingly, petitioner and his family members were justified in

5

their belief that reporting the incidents might expose them to additional harm. *See Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1088 (9th Cir. 2005).

Second, some evidence in the record describes how members of the Guatemalan government have been unresponsive toward reports of crimes committed against homosexuals and have even participated in violence toward homosexuals. In a 1996 interview, a lesbian who resides in Guatemala explained that there was currently "no acceptance" of homosexuality within Guatemalan society and "[g]ays and lesbians fear violence—violence from heterosexuals and violence from the police because when the police arrest us, they abuse us and violate us." Ruben Mayorga, the Executive Director of OASIS, a community-based organization that focuses on AIDS prevention for the gay community in Guatemala, described in 1996:

> [H]omosexuals are routinely harassed by family members, the church, the military and police forces, the media, the educational system, and by society at large. Because there are no formal laws [protecting sexual preference], gays and lesbians who have been persecuted on the basis of their sexual orientation have no judicial recourse.

The record also indicates that, in the late 1990s, a string of homicides of transvestites occurred in which the police were either complicit or did not thoroughly investigate. The U.N. Mission noted a "social cleansing" effort against homosexuals and "practices leading to the extrajudicial execution of such persons through planned and coordinated actions." The World Policy Institute surmised that "homosexuals

6

cannot under any circumstances count on the authorities to either protect them from violence, or to pursue assailants after the fact." The United States granted asylum to some Guatemalans who had been brutally attacked by members of the government on account of their homosexuality. *See* U.N. High Comm. for Refugees, Reg'l Office for U.S. & Caribbean, Aslyum & the Law (Dec. 1998–Jan. 1999).

U.S. State Department reports on human rights practices in Guatemala confirm that police officers and other government officials, at least at times, have been unsympathetic toward persecution homosexuals have faced. The 2003 Report relates:

> The Constitution states that all persons are free and equal in dignity and rights and that the State must protect the life, liberty, justice, security, peace, and development of all citizens. However, in practice, the Government frequently was unable to enforce these provisions, due to inadequate resources, corruption, and a dysfunctional judicial system . . . .
> During the year, there were at least five killings of male homosexual sex workers. There were no arrests made in any of the killings, and the police who arrived on the scene abused the victims' companions. There were no arrests in the 2000 killings of five male homosexual sex workers.

Moreover, we take judicial notice that the most recent report, released on March 11, 2010, likewise includes descriptions of police abuse toward homosexuals. The Report details how "[p]olice threatened persons engaged in prostitution and other commercial sexual activities with false drug charges to extort money or sexual favors and harassed lesbians and gay persons and transvestites with similar threats." 2009

State Department Country Report, Guatemala, *available at* http://www.state.gov/g/drl/rls/hrrpt/2009/wha/136114.htm. Due to "[a] lack of trust in the judicial system and a fear of further persecution or social recrimination," victims often do not file complaints. *Id.*

While the foregoing evidence covers a period of time after the attacks on petitioner and his father, it reveals widespread intolerance of and entrenched discrimination toward homosexuals that has prevailed over time and can reasonably be assumed to have encompassed the relevant period. Under these circumstances, petitioner was justified in his belief that the police would do "nothing" if told about the incidents because "[t]hey don't care." *See Castro-Perez v. Gonzales*, 409 F.3d 1069, 1070–72 (9th Cir. 2005).

We therefore conclude that the evidence in the record compels a finding that petitioner suffered past persecution. *See* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). This entitles petitioner to a presumption that he also has a well-founded fear of future persecution. Nevertheless, the IJ held that, even if petitioner had established that Guatemala was unable or unwilling to control the persecution—and thus established all three requirements for past persecution—"he fails to prove that he has the subjective or objective well-founded

fear of returning." This statement improperly suggests that petitioner, rather than the government, has the burden of proving a well-founded fear of future persecution if he established past persecution. Similarly, the BIA did not consider this presumption in its decision but rather adopted and affirmed the IJ's decision, which erroneously overlooked the presumption. Accordingly, we remand the case to the BIA for further proceedings consistent with this opinion.

## CONCLUSION

The petition is **GRANTED** and the case is **REMANDED**.