**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MATEO NICOLAS CARRANZA-ALBARRAN, AKA Alejandro Carranza, <br><br> Petitioner, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General, <br><br> Respondent. | No. 17-70250 <br><br> Agency No. A208-305-103 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 14, 2019
Portland, Oregon

Before: N.R. SMITH, WATFORD, and R. NELSON, Circuit Judges.

Mateo Carranza-Albarran is a citizen of Mexico applying for asylum,

withholding of removal, and relief under the Convention Against Torture (CAT).

He claims that he was persecuted in Mexico on account of his membership in a

particular social group, which in his case, was defined by sexual orientation. *See* 8

U.S.C. § 1101(a)(42); *Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1087–88 (9th Cir.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

2005). The immigration judge (IJ) denied his application on the basis of an adverse credibility determination. The Board of Immigration Appeals (BIA) affirmed that determination and dismissed Carranza-Albarran's appeal. In making its decision, the BIA relied on three alleged omissions from Carranza-Albarran's asylum application and two alleged omissions from his testimony. Carranza-Albarran petitions for review. We conclude that the BIA's adverse credibility determination is not supported by substantial evidence.

**1.** The BIA identified three omissions from Carranza-Albarran's asylum application: his rape by the police, sexual abuse by his brother, and harassment by classmates during a seventh-grade field trip. We do not think that any of these asserted omissions support the BIA's adverse credibility determination.

Our court has stated that "[o]missions from asylum applications are often not a sufficient basis for discrediting later testimony." *Alvarez-Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003). Although the REAL ID Act specifies that "consistency between the applicant's . . . written and oral statements" is a relevant factor in weighing an asylum applicant's credibility, some omissions do not create any inconsistency. 8 U.S.C. § 1158(b)(1)(B)(iii). The facts of this case illustrate why we frequently discount omissions from asylum applications. Carranza-Albarran does not understand English and filled out his asylum application (in

English) with the help of a preparer who is not a lawyer. *See Alvarez-Santos*, 332 F.3d at 1254. Carranza-Albarran testified that he had to communicate with the preparer, who did not speak Spanish, through an interpreter. The preparer appears to have not understood how to fill out the asylum application, as he failed to discuss in any detail the instances of persecution that Carranza-Albarran had described during his credible-fear interview. This is therefore not a case in which an asylum applicant omitted significant incidents from an otherwise detailed asylum application.

We further discount the significance of the alleged omissions from Carranza-Albarran's asylum application because he had already mentioned all three of the incidents at issue during his credible-fear interview. This case is therefore distinguishable from cases in which asylum applicants testify about significant incidents or details for the first time during their removal hearings, often at the prompting of their lawyers. *See Silva-Pereira v. Lynch*, 827 F.3d 1176, 1185–86 (9th Cir. 2016); *Alvarez-Santos*, 332 F.3d at 1248–49, 1254.

In any event, as to the alleged omission of the incident involving Carranza-Albarran's rape by the police, it is not at all clear that Carranza-Albarran in fact omitted this incident from his asylum application. The application stated that the police in Mexico "extort, rape, [and] assault" LGBT individuals and that Carranza-

Albarran experienced that treatment when he lived in Mexico. Carranza-Albarran's pro se status warrants a charitable reading of this unambiguous reference to police rape, despite its lack of specificity. *See Smolniakova v. Gonzales*, 422 F.3d 1037, 1045 (9th Cir. 2005).

**2.** The BIA also upheld the adverse credibility determination on the basis of Carranza-Albarran's failure to mention the incidents of sexual abuse by his brother and harassment by his classmates during his testimony at the removal hearing, until he was prompted to do so by the IJ. It is certainly true that the omission of significant events from an asylum applicant's testimony can support an adverse credibility determination. For example, in *Jiang v. Holder*, 754 F.3d 733 (9th Cir. 2014), we held that the asylum applicant's failure to testify about being beaten by the police, after describing that incident in her asylum application, provided sufficient evidence for the BIA's adverse credibility determination. *See id.* at 738–40. However, the omission can't serve as the basis for an adverse credibility determination if the record compels acceptance of the asylum applicant's explanation for the omission. *See id.* at 739–40. In *Jiang*, the asylum applicant explained that she failed to mention the police beating because she was confused by her lawyer's line of questioning. *See id.* at 739. We concluded that, although the evidence in the record supported that explanation, it did not compel a

reasonable adjudicator to credit the explanation. *See id.* at 739–40. We therefore upheld the BIA's adverse credibility determination. *See id.*

Here, in contrast, although Carranza-Albarran similarly omitted significant incidents from his testimony, he provided a compelling explanation for one of the two omissions and was not given a reasonable opportunity to explain the other.

As to the first omission, Carranza-Albarran explained that he did not mention that he was sexually abused by his brother because he was "ashamed." The IJ did not accept this explanation. She did not believe that Carranza-Albarran could be too ashamed to mention the sexual abuse by his brother, since he was willing to testify about his rape by the police. The IJ's reason for discrediting Carranza-Albarran's explanation is not supported by substantial evidence. *Cf. id.* at 738–40. During his credible-fear interview, Carranza-Albarran stated that he had never discussed the sexual abuse by his brother with anyone because he believed that it was a "mortal sin." He also asked the asylum officer whether his responses during the interview would be kept confidential. The record thus compels acceptance of Carranza-Albarran's explanation.

As to the second omission, the IJ did not provide Carranza-Albarran with a reasonable opportunity during the removal hearing to explain why he failed to mention the field trip incident. *See Bhattarai v. Lynch*, 835 F.3d 1037, 1045 (9th

Cir. 2016). When she asked Carranza-Albarran about the omission, the IJ mischaracterized Carranza-Albarran's account of the incident. The IJ said Carranza-Albarran had stated that he was forced to perform oral sex during the field trip. Carranza-Albarran corrected the IJ, clarifying that he had stated that he was asked to perform oral sex but did not ultimately do so. The IJ mistook this correction as an explanation for the omission and moved on to her next question.

Even assuming that Carranza-Albarran's statement was an explanation, the record compels a reasonable adjudicator to credit it. *Cf. Jiang*, 754 F.3d at 738–40. During the removal hearing, the IJ and the government lawyer repeatedly asked Carranza-Albarran to describe incidents in which he was "harmed" or "threatened." According to Carranza-Albarran's account of the event, he was not harmed or threatened during the field trip. He allegedly avoided performing oral sex by denying that he was gay, and the boys did not threaten to harm him if he refused to perform oral sex.

We therefore reverse the BIA's adverse credibility determination and remand to the BIA to reconsider Carranza-Albarran's claims for asylum, withholding of removal, and relief under the Convention Against Torture.

**PETITION FOR REVIEW GRANTED.**

*Carranza-Albarran v. Barr*, No. 17-70250

Smith, N.R., Circuit Judge, dissenting.

Petitioner here requested only the review of an adverse credibility determination. The standard for reviewing an adverse credibility finding of the Board of Immigration Appeals (BIA) is substantial evidence. *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010). Although "[s]ubstantial evidence is more than a mere scintilla," it is also "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 618 (9th Cir. 2006) (quotation marks and citation omitted). To establish that substantial evidence does not support the BIA's decision, the petitioner must show "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

Rather than applying this required standard of review—whether substantial evidence supported the BIA's decision—the majority substitutes its findings of fact (never mind that those findings are contrary to those of the immigration judge (IJ)[1]); the majority then concludes that a different result is compelled (never mind

---

[1] The majority exceeds its authority in making these findings. Even the BIA cannot "make its own factual findings to resolve these issues"; rather "if the BIA believes that it cannot decide the case without resolution of these facts, then it must remand to the IJ for further factual findings." *See Rodriguez v. Holder*, 683 F.3d

(continued...)

that to do so, the majority itself must find Carranza-Albarran credible[2]).

Obviously sympathetic to Carranza-Albarran, the majority concludes that Carranza-Albarran's story must be true, because he relayed a similar story to an asylum officer during a credible fear interview and, eventually, to an IJ. However, the BIA concluded Carranza-Albarran was not credible, because he failed to make those same claims in his asylum application and failed to assert two of the claims to the IJ until he was finally confronted with the assertions (following at least six different questions about the harm he suffered in Mexico). Instead of determining whether substantial evidence exists to support the BIA's conclusions, the majority makes its own factual findings in its opinion and makes excuses as to why Carranza-Albarran failed to make the same allegations in his asylum application and to the IJ as he voluntarily made to the asylum officer.

A brief summary of the record highlights the extent to which the IJ attempted to help Carranza-Albarran present his claim and why the IJ's adverse credibility finding is supported by substantial evidence. Carranza-Albarran ended

---

[1](...continued)
1164, 1173 (9th Cir. 2012).

[2] We do not use the "deemed credible" rule in the immigration context when there is a "reasonable prospect from the administrative record that there may be additional reasons [for an adverse credibility finding] upon which the IJ or BIA could rely." *See Soto–Olarte v. Holder*, 555 F.3d 1089, 1094-95 (9th Cir. 2009).

his evidentiary statement to the IJ by testifying to only two incidents of harm: (1) the police took his money, cell phone, and watch, and then left him on a non-homosexual street, and (2) the Zetas threatened him and required him to pay them quotas. After testifying about these incidents, the IJ asked if anything else happened. Carranza-Albarran stated, "That's it."

The IJ made a few more inquiries and then asked again, "Did you have any other problems in Mexico?" Carranza-Albarran then testified that he was beat up at a soccer field. The IJ thereafter asked, "Did you have any other problems?" Carranza-Albarran again said, "That's it." The IJ next asked him what he feared in Mexico when he came to the United States in 2001. In response, Carranza-Albarran provided more details about the incident at the soccer field. Following this testimony, the IJ again questioned, "Is there any other reason why you do not want to return to Mexico?" Carranza-Albarran again raised the Zetas' threats. The IJ inquired again if there was any other reason he feared returning to Mexico. This time, Carranza-Albarran asserted that he was raped by police officers.[3] Carranza-

---

[3] At that time, the IJ also confronted Carranza-Albarran with regard to why he had not previously mentioned this incident, to which Carranza-Albarran responded that he mentioned it in his credible fear interview. The IJ further asked him why he did not mention it in his asylum application. Carranza-Albarran asserted that the person, who helped him fill out the application, "perhaps . . . didn't put it down." The IJ noted that the application did not indicate that it

(continued...)

3

Albarran was asked additional questions about the alleged rape and his return to Mexico in 2013. Following these questions, the IJ again followed up, "Did you have any other problems in Mexico?" Again, Carranza-Albarran said, "That's it."

The IJ questioned Carranza-Albarran more about the rape, after which the IJ again asked if there was any other incident in Mexico. Carranza-Albarran again told the IJ, "That's it." After additional questioning about the prior addressed incidents, the IJ once again asked if there was anything else. Carranza-Albarran, for the sixth time, told the IJ, "That's it."

The IJ then questioned Carranza-Albarran about his prior statements to the asylum officer, wherein he claimed he was propositioned by ten boys on a field trip and sexually abused by his brother. After confrontation, the IJ rejected Carranza-Albarran's explanation why he did not raise the claims earlier, because (1) the IJ did not believe that the explanation that Carranza-Albarran felt shame was reconcilable with his description of the other events, and (2) the IJ did not believe that Carranza-Albarran failed to raise the issue, because he was not actually forced

---

[3](...continued)
was filled out by someone else. Carranza-Albarran denied filling out the application himself, but could not explain why the preparer failed to fill out the preparer section.

to perform oral sex on ten individuals, despite the threats.[4]

The BIA affirmed the IJ's decision because Carranza-Albarran (1) failed to mention in his asylum application the rape by the police, the abuse by his brother, or the threats by the school boys and (2) failed to raise to the IJ the latter two incidents until he was prompted (despite being repeatedly asked if he suffered any other harm).

1.    The majority excuses Carranza-Albarran's failure to include the claims in his application, because the majority finds that (a) he was assisted by a preparer (who was not a lawyer) who improperly filled out his application, and (b) he had previously addressed these claims before the asylum officer.  However, in making this finding of fact, the majority ignores the IJ's rejection of Carranza-Albarran's claim that he received assistance in filling out his application, because the application did not indicate that anyone else filed or completed it.  The IJ

---

[4] Although I am not sure that the IJ mischaracterized the incident where Carranza-Albarran alleged that ten boys "surrounded [him] and said that if [he] was a fag (marica) that [he] had to perform oral sex on all of them," it is also not clear whether Carranza-Albarran was providing an explanation to the IJ's question or explaining what occurred.  Thus, I do not rely on this finding as a basis for the adverse credibility finding.

Nevertheless, the majority's conclusion—that Carranza-Albarran did not describe this incident because he was not harmed—fails.  Aside from not applying the proper standard of review, it also ignores the fact that Carranza-Albarran testified to at least one other incident (a car driving by with people inside yelling obscenities), which did not include any threat or harm.

confronted Carranza-Albarran about filling out the asylum application. Carranza-Albarran testified he did not fill out the application, because he didn't understand English. Instead, Carranza-Albarran claimed a person named Gonzales (who did not speak Spanish) assisted him in filling out the application with the help of an interpreter. However, Carranza-Albarran could not explain why the alleged preparer did not include the preparer information on the application. Instead of determining whether substantial evidence supported the IJ's determination, the majority undertakes its own fact finding, assuming as true Carranza-Albarran's claim that he used a preparer that did not speak Spanish. Then it concludes that, because no preparer is indicated on the application, the preparer did not understand how to fill it out. Come on, it is not our role "to substitute our own judgment regarding an asylum applicant's credibility for that of the IJ." *Kumar v. Gonzales*, 444 F.3d 1043, 1056 (9th Cir. 2006) (Kozinski, J, dissenting in part). Although it is possible that Carranza-Albarran was unable to fill out the asylum application himself, it is equally possible that he was able to personally complete it. And we should be "mindful that 'IJs are in the best position to assess demeanor and other credibility cues that we cannot readily access on review.'" *Manes v. Sessions*, 875 F.3d 1261, 1263 (9th Cir. 2017) (alteration omitted) (quoting *Shrestha*, 590 F.3d at 1041).

Next, the majority jumps to the factual conclusion that, because Carranza-Albarran told the asylum officer these claims, he must have also provided these claims to the alleged preparer; that the preparer again must not have known how to fill out the application, because there was a lack of detail in the claims of persecution. Yet, all Carranza-Albarran claimed about the failure to provide this information in the asylum application was that the preparer "perhaps . . . didn't put it down." Carranza-Albarran does not specifically claim that he told the preparer all of these incidents occurred.

Never mind that a review of the application and declaration does not show that the alleged preparer did not know how to fill out the application. Aside from the possibility that the preparer failed to indicate that he filled out the application on Carranza-Albarran's behalf, nothing in the application was improperly completed. The declaration is relatively detailed as to Carranza-Albarran's personal history with regard to his family, his journey to/from the United States, and his problems while in the United States. One should also note that, when the declaration switches to "Mexico Country Conditions," the tone and clarity of the declaration changes. Instead of explaining the harms that he personally experienced, Carranza-Albarran provides general information about the difficulties of the LGBT community in Mexico. The declaration makes only one vague

7

reference to the harm he personally suffered.[5]

The mere fact that Carranza-Albarran had previously mentioned these claims to an asylum officer does not make the failure to allege any specific harm in his asylum application less significant.  To the contrary (as the BIA concluded), Carranza-Albarran's credibility is undermined, because he cannot tell a consistent story at each stage of the process.  Although omissions in asylum interviews, *Singh v. INS*, 292 F.3d 1017, 1021 (9th Cir. 2002), or asylum applications, *Lopez-Reyes v. INS*, 79 F.3d 908, 911 (9th Cir. 1996), generally do not support an adverse credibility finding, Carranza-Albarran's omissions came after a detailed asylum interview.  Thus, Carranza-Albarran's situation is not similar to the typical case where an applicant forgot to mention an event or provided less detail in an earlier

---

[5] The majority also erred in concluding that Carranza-Albarran raised the issue of rape.  In context, Carranza-Albarran alleged:

> We suffer Homophobic attack, discrimination turn to hate crime to violence and killing with that we can not get any relief or help from the police.  Because they will extort, rape, assault most of the cases toward LGBT is un-reported. That is the Current condition of my Country as of today.  As myself suffered during the time I was living in Mexico.

One might conclude from the above statement that Carranza-Albarran was raped by the police, but only if that statement is read (very) charitably.  A more accurate (yet still charitable) reading is that Carranza-Albarran suffered homophobic attacks, discrimination, hate crimes, and violence, which were never reported to the police.

8

statement. Instead, Carranza-Albarran provided the most detailed statement in his initial interview, provided virtually no detail in his asylum application, but then provided some of the claims in his testimony before the IJ but only after repeated prompting and confrontation. Even if Carranza-Albarran had assistance filling out his application, the failure to recount any specific incident of harm in his asylum application is sufficient evidence to support the BIA's adverse credibility finding. *See Alvarez-Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003) (noting that there were "compelling reasons for discrediting [petitioner's] testimony concerning a dramatic, pivotal event that had been omitted from his asylum application[]").

2.    Even assuming that we should give leniency to Carranza-Albarran because he (or his alleged preparer) had difficulties filling out the application, there is nothing in this record compelling us to conclude that the IJ's adverse credibility finding based on Carranza-Albarran's failure to testify concerning two of his claims of abuse (until "super coaxed" by the IJ) was not supported by substantial evidence. *See Linhua Jiang v. Holder*, 754 F.3d 733, 738-39 (9th Cir. 2014). Carranza-Albarran unequivocally and repeatedly stated, "That's it," in response to repeated questions concerning whether he encountered additional incidents in Mexico. He reversed himself only when the IJ confronted him with two additional claims he made to the asylum officer. Under these circumstances, we cannot say

9

that Carranza-Albarran has demonstrated "that no reasonable factfinder could fail to find [that he was credible]." *Elias-Zacarias*, 502 U.S. at 484.

This situation mirrors *Linhua Jiang*, where the IJ similarly prompted the petitioner multiple times, and each time the petitioner failed to assert she was physically abused. 754 F.3d at 737. The majority recognizes that the case is similar factually, but rejects *Linhua Jiang* as controlling. Instead, the majority finds Carranza-Albarran's explanation (that he failed to assert the claim because he was ashamed) credible. Again, substituting its judgment regarding Carranza-Albarran's credibility for that of the IJ, the majority decides that a different conclusion is compelled, because Carranza-Albarran's statements to the asylum officer support his explanation. However, applying a substantial evidence standard of review, it is unclear why Carranza-Albarran's explanation that he was too ashamed to testify about the incidents to the IJ necessarily *compels* a different conclusion. He was not too ashamed to raise it for the first time to the asylum officer, and (as the IJ noted) he was able to raise other incidents of harm, including the rape by the police, that were similarly difficult subjects. Even if the record could possibly support a "different conclusion," *see Donchev v. Mukasey*, 553 F.3d 1206, 1215 n.23 (9th Cir. 2009), applying the proper "healthy measure of deference" to the IJ (which we must), a different conclusion is not compelled, *see*

10

*Shrestha*, 590 F.3d at 1041.