**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

OCT 16 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ARSEN VARDANYAN,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No.    19-72580

Agency No. A215-911-366

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 5, 2020
Pasadena, California

Before:  M. SMITH and OWENS, Circuit Judges, and CARDONE,[**] District
Judge.

Arsen Vardanyan, a native of the former Soviet Union and citizen of

Armenia, petitions for review of the Board of Immigration Appeals' (BIA) order

dismissing his appeal from an immigration judge's (IJ) decision denying asylum,

withholding of removal, and protection under the Convention Against Torture

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Kathleen Cardone, United States District Judge for the
Western District of Texas, sitting by designation.

(CAT). The parties are familiar with the facts, so we do not recite them here, except as necessary to provide context to our ruling. We have jurisdiction under 8 U.S.C. § 1252. We review the BIA's legal conclusions de novo and its factual findings for substantial evidence. *Singh v. Whitaker*, 914 F.3d 654, 658 (9th Cir. 2019) (citing *Ali v. Holder*, 637 F.3d 1025, 1028–29 (9th Cir. 2011)). Applying the substantial evidence standard, we uphold the agency's determination unless "compelled to conclude to the contrary." *Id.* (quoting *Ali*, 637 F.3d at 1029). And if the BIA relies in part on the IJ's reasoning, we review both decisions. *Singh v. Holder*, 753 F.3d 826, 830 (9th Cir. 2014) (quoting *Flores-Lopez v. Holder*, 685 F.3d 857, 861 (9th Cir. 2012)). We grant the petition in part, deny the petition in part, and remand.

1. Vardanyan argues the BIA erred in finding that the government established a fundamental change in country conditions warranting his removal. It is undisputed that Vardanyan experienced past persecution and is entitled to the presumption of a well-founded fear of future persecution. *See Parada v. Sessions*, 902 F.3d 901, 911 (9th Cir. 2018) (citing 8 C.F.R. § 1208.13(b)(1)). Where the government seeks to rebut a presumption of well-founded fear through evidence of changed country conditions, "the IJ must make an 'individualized determination' of how the changed circumstances affect the alien's specific situation." *Id.* at 912 (quoting *Ali*, 637 F.3d at 1030). "The hallmark of an 'individualized determination'

2

is a tailored analysis of the petitioner's specific harms and circumstances." *Ali*, 637 F.3d at 1030.  While information about country-wide conditions may be useful and, even decisive, such information is not sufficient on its own.  *See id.*  Rather, "the IJ and BIA must apply the findings from the reports to the petitioner's specific harms and circumstances."  *Id.* (citations omitted).

Here, the IJ and BIA failed to analyze Vardanyan's specific circumstances in finding a fundamental change in circumstances.  The IJ relied on evidence that "[Vardanyan's] previous persecutors [were] no longer the dominant political party."  The IJ found that Vardanyan's fear of return—which it ascribed to his "activism against Republican Party members and his support of the Yelk Alliance"—was no longer justified, because the Yelk Alliance had subsequently assumed power, the Republican Party no longer controlled parliament, and the corrupt oligarch who had extorted Vardanyan, Mihran Poghosyan, was "no longer in a position of political power."

It is true that the first several instances of persecution against Vardanyan were due to his public support of the opposition movement.  However, this was not the full extent of Vardanyan's persecution.  Prior to the so-called "Velvet Revolution," Vardanyan was taken by force to meet with Poghosyan in February 2018 and was brutally beaten and threatened into selling his automobile repair business to Poghosyan at a price Poghosyan set, and which Poghosyan never paid.

Vardanyan was also persecuted by the police after attempting to file a criminal complaint against Poghosyan in June 2018. Upon checking on the status of his complaint after several months, Vardanyan was beaten and held in police custody for two days because he refused to retract his complaint and said he would report the police to the prosecutor's office. Then, a few days after his release from custody, the police questioned and beat Vardanyan at his home. An anonymous caller subsequently threatened to kill Vardanyan if he remained in Armenia. It was this series of events that ultimately led Vardanyan to flee the country. Notably, Vardanyan's persecution by police occurred after the spring 2018 elections which purportedly "end[ed] the reign of . . . the Republican party of Armenia," and "the new government launched a series of investigations to prosecute systemic government corruption."

The BIA and IJ largely failed to consider the foregoing evidence of Vardanyan's persecution.[1] As a result, the BIA and IJ's findings were not sufficiently individualized. *See Chand v. I.N.S.*, 222 F.3d 1066, 1079 (9th Cir.

---

[1] "Whistle-blowing against government corruption is an expression of political opinion." *Baghdasaryan v. Holder*, 592 F.3d 1018, 1024 (9th Cir. 2010); *see also Fedunyak v. Gonzales*, 477 F.3d 1126, 1129–30 (9th Cir. 2007) (finding, where the petitioner was persecuted by police for reporting extortion by a public official, that petitioner's conduct was political activity opposing institutional corruption); *Sagaydak v. Gonzales*, 405 F.3d 1035, 1042 (9th Cir. 2005) ("Retaliation for investigating or publicizing corruption by political figures is by its very nature a political act.").

2000) ("[W]e have long held that the determination of whether or not a particular applicant's fear is rebutted by general country conditions information requires an individualized analysis that focuses on the specific harm suffered[.]").

Although the BIA did mention Vardanyan's persecution by the police, its reasoning was insufficient. Both the IJ and BIA failed to properly analyze how these changed conditions impacted Vardanyan, such that law enforcement and Poghosyan would not again persecute him for attempting to expose Poghosyan's extortion. *See Garrovillas v. I.N.S.*, 156 F.3d 1010, 1017 (9th Cir. 1998) ("In the absence of any explanation as to how any change in conditions in the [country of origin] would serve to rebut [the petitioner's] particular fear of persecution, the presumption stands unrebutted."). The BIA and IJ failed to make an individualized determination as to the effect of the changed conditions in Armenia after the Velvet Revolution on Vardanyan's situation. *See Ali*, 637 F.3d at 1030; *Chand*, 222 F.3d at 1079.

2. Vardanyan next argues that substantial evidence does not support the IJ and BIA's conclusion that Vardanyan could safely and reasonably relocate within Armenia to avoid persecution. In addition to asserting changed country conditions, the government may rebut a presumption of future persecution by establishing that 1) the petitioner could safely escape persecution by relocating internally within the country, and 2) it would be reasonable to expect the petitioner

5

to do so. *Doe v. Holder*, 736 F.3d 871, 879 (9th Cir. 2013). "[C]ompelling evidence of past persecution shifts the burden to the government to prove, by a preponderance of the evidence, that [the petitioner] could relocate safely and that it would be reasonable to expect [him] to do so." *See Mashiri v. Ashcroft*, 383 F.3d 1112, 1122 (9th Cir. 2004); *see also Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1090 (9th Cir. 2005).

In this case, the BIA presumed that relocation would be reasonable. This improperly shifted the government's burden of establishing reasonableness to Vardanyan, who, as a result, was required to establish the unreasonableness of relocation. This was error. *See Mashiri*, 383 F.3d at 1122.

Further, the BIA failed to make the necessary individualized determination as to the possibility of Vardanyan's safe relocation within Armenia. *See Singh v. Whitaker*, 914 F.3d at 661. The IJ's conclusion that "[Vardanyan] has not established that his persecutors were or are members of the national government" is not only controverted by the evidence but is also not sufficiently individualized as to the possibility of Vardanyan's safe relocation. *See id*. Moreover, if Vardanyan were persecuted by government officials he would be entitled to a presumption that it would be unsafe for him to relocate nationwide. *See id*.; *Boer-Sedano*, 418 F.3d at 1090. In addition, the IJ's finding that Vardanyan was previously able to safely relocate to a "different region in Armenia" is not

6

supported by substantial evidence, and Vardanyan's hiding at a friend's house for a few days following the February 2018 incident provides little support that he could safely relocate. As a result, the BIA erred.

3. Vardanyan also asks us to reverse the BIA's determination that he is entitled to humanitarian asylum and withholding of removal. The briefs and record demonstrate that Vardanyan's persecution did not rise to the level of persecution warranting humanitarian asylum. *See Singh v. Whitaker*, 914 F.3d at 662 (citing *Hanna v. Keisler*, 506 F.3d 933, 936–37, 939 (9th Cir. 2007); *Marcu v. I.N.S.*, 147 F.3d 1078, 1080, 1083 (9th Cir. 1998)). Although the standard for withholding of removal is more demanding than for statutory asylum, the finding of past persecution creates a rebuttable presumption that Vardanyan has shown a clear probability of future persecution. *See Navas v. I.N.S.*, 217 F.3d 646, 663 (9th Cir. 2000). As with the statutory asylum claim, the BIA failed to accord Vardanyan this rebuttable presumption and failed to perform an individualized analysis of the clear probability of Vardanyan's future persecution and ability to relocate within Armenia. *See Singh v. Whitaker*, 914 F.3d at 659–61 n.2, 664; *Navas*, 217 F.3d at 663. As a result, the BIA erred as to this withholding of removal claim as well.

For the foregoing reasons, we grant the petition for review in part and remand to the BIA for consideration of the statutory asylum and withholding of removal

claims.  We deny the petition as to the humanitarian asylum claim.[2]  Vardanyan's

pending motions to stay removal are accordingly denied as moot.

**PETITION GRANTED AND REMANDED IN PART, DENIED IN PART.**

---

[2] Before this court, Vardanyan does not challenge the agency's denial of his CAT claim.