**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LIEKE LOHO,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney General,

*Respondent.*

No. 04-73136

Agency No.
A95-178-821

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 5, 2008—Pasadena, California

Filed July 8, 2008

Before: John R. Gibson,* Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge O'Scannlain

---

*The Honorable John R. Gibson, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

## COUNSEL

Joseph S. Porta, Esq., Law Offices of Cohen, Porta & Kim, Los Angeles, California, argued the cause for the petitioner and was on the briefs.

Anthony Norwood, Attorney, Department of Justice, Washington, D.C., argued the cause for the respondent and was on the briefs; Peter D. Keisler, Assistant Attorney General, Civil Division, Terri J. Scadron, Mark L. Gross, Gregory B. Friel, and Christopher C. Wang, Attorneys, Department of Justice, Washington, D.C., were on the briefs.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether an immigration judge properly discredited an asylum applicant's claim that she suffered persecution in her native country of Indonesia, when previous to her applications she twice visited the United States and yet voluntarily returned to Indonesia following each sojourn.

I

Lieke Loho, a native and citizen of Indonesia, was admitted into the United States as a non-immigrant visitor on July 9, 2001. Shortly thereafter, Loho filed applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). At the heart of her applications were claims that indigenous Indonesians persecuted her because of her Chinese ethnicity and Christian faith.

At the removal hearing that followed, Loho alleged, among other things, that she twice was attacked by assailants uttering racial slurs, that her house was robbed by indigenous Indonesians, and that her workplace and church were damaged during riots aimed at Indonesians of Chinese ancestry. Loho also testified that she visited family in the United States on two occasions during the period of alleged persecution, once in 1998 for two weeks and once in 2000 for ten days. Loho voluntarily returned to Indonesia after each visit without applying for asylum or otherwise seeking to remain in the United States. When asked by the immigration judge ("IJ") why she failed to apply for asylum during her visits, Loho explained that "the time was so short and [she] didn't know about asylum," and that she "didn't have a chance" to look into filing such an application. In discussing her 2000 visit, Loho acknowledged that she was informed by a cousin who was a United States citizen and resident about the possibility of not returning to Indonesia. The cousin, however, "was busy" and

therefore could not assist her. While Loho testified that she "actually was afraid to return" to Indonesia, she explained that she did anyway because she was excused from her job as a manager of a "food business" for only ten days and thus "had to work."

The IJ found that Loho was not credible and therefore denied her asylum, withholding of removal and CAT claims. The IJ based his adverse credibility finding, in relevant part, on Loho's "astonishing" explanation that she did not "have time" to look into the possibility of applying for asylum during her previous visits to the United States, despite the severe mistreatment she claimed to have suffered in Indonesia. The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's adverse credibility finding.

II

To be eligible for asylum, Loho must proffer sufficient credible evidence that she is unwilling or unable to return to her country of origin " 'because of persecution or a well-founded fear of future persecution on account of [her] race, religion, nationality, membership in a particular social group, or political opinion.' " *Singh v. Ashcroft*, 367 F.3d 1139, 1142 (9th Cir. 2004) (quoting 8 U.S.C. § 1101(a)(42)(A)). We have defined persecution as "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive," but have noted that it is an "extreme concept that does not include every sort of treatment our society regards as offensive." *Mansour v. Ashcroft*, 390 F.3d 667, 672 (9th Cir. 2004) (internal quotation marks omitted).

**[1]** It is well established in this court that an alien's history of willingly returning to his or her home country militates against a finding of past persecution or a well-founded fear of future persecution. *See, e.g.*, *Kumar v. Gonzales*, 439 F.3d 520, 524 (9th Cir. 2006) (denying a petition for review where

"[t]he IJ stated that Mr. Kumar's voluntary return to Fiji was indicative of Kumar's own belief that it would be safe and appropriate for him to live in Fiji"); *Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1091 (9th Cir. 2005) (noting that "return trips can be considered as one factor, among others," in determining whether an applicant has a well-founded fear of future persecution).

**[2]** As the foregoing precedent demonstrates, we have considered a petitioner's voluntary return to his or her home country solely in the context of assessing whether such petitioner suffered past persecution or possessed a well-founded fear of future persecution. In this case, however, the IJ considered Loho's voluntary return as detracting from the credibility of her testimony altogether. We fail to see why the IJ's reliance on such fact in rendering his adverse credibility finding was inappropriate. Loho's admission that she twice was offered a clear opportunity to flee her native land, and yet willingly returned, inherently undermines her testimony that she experienced past suffering or that she feared returning home. It therefore is of little surprise that two of our sister circuits have upheld adverse credibility findings founded in part on a petitioner's voluntary return. *See Tarraf v. Gonzales*, 495 F.3d 525, 530, 534 (7th Cir. 2007); *Jean v. Gonzales*, 461 F.3d 87, 89, 91 (1st Cir. 2006).

**[3]** Although we have never held as much, our caselaw has implied that a petitioner's voluntary return may be considered in rendering an adverse credibility finding. In *Ding v. Ashcroft*, 387 F.3d 1131 (9th Cir. 2004), we rejected an adverse credibility finding where the IJ relied in part on its conclusion that the petitioner "was unable or unwilling to explain why she did not seek refuge in another country nor why she voluntarily returned to the country where she claimed to have been persecuted." *Id.* at 1139-40 (internal quotation marks omitted). There, we held that the IJ improperly ignored Ding's testimony "that her travel documents were held by the leaders of her trip, under whose control she remained at all times" and

that she "was not even aware that the United States could offer her asylum." *Id*. at 1140.

Here, by contrast, Loho alleged in her asylum application that she was "especially fearful that [she and her family] could be . . . victims because of the consuming hatred the Muslim native Indonesians have against them and their aims to eliminate all Non-Muslims from Indonesia." Nevertheless, she twice voluntarily returned to Indonesia after reaching a point of safety in the United States. Unlike the petitioner in *Ding*, Loho was not coerced into returning. Rather, Loho testified that she stepped back into the den of the "consuming hatred" she feared for the purpose of returning to work. We also note that Loho was put on notice of the possibility of staying in the United States by her cousin, yet when Loho learned that her cousin was too busy to assist her, she failed to take *any* additional steps to avoid returning to Indonesia.

**[4]** We are persuaded that Loho's two voluntary returns to her home country support the IJ's adverse credibility finding even though she was not specifically aware of the possibility of applying for asylum. What cuts against Loho's credibility is not that she failed to submit an asylum application during her previous visits, but that after leaving her home country for the safety of the United States, Loho took minimal steps to investigate the availability of some means of avoiding a return to the country she claims to have feared. In light of the "extremely deferential" review of an IJ's decision that applies, *see Wang v. INS*, 352 F.3d 1250, 1257 (9th Cir. 2003), such evidence is sufficient to support the IJ's adverse credibility finding. *See Don v. Gonzales*, 476 F.3d 738, 743 (9th Cir. 2007). Accordingly, we must conclude that Loho has produced insufficient evidence to compel the conclusion that she suffered past persecution or has a well-founded fear of future persecution in Indonesia. *Kohli v. Gonzales*, 473 F.3d 1061, 1071-72 (9th Cir. 2007).

## III

**[5]** Because Loho's asylum claim fails, she necessarily cannot satisfy the more stringent standard of proof required to demonstrate eligibility for withholding of removal. *See Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003). Moreover, in light of the IJ's adverse credibility finding, we are satisfied that substantial evidence supports denial of Loho's claim under CAT. *See Malhi v. INS*, 336 F.3d 989, 993 (9th Cir. 2003) (noting that relief under CAT requires a showing that "it is 'more likely than not' that [the petitioner] will be tortured if returned to [his native land]" (quoting 8 C.F.R. § 208.16(c)(2)); *see also Farah*, 348 F.3d at 1157 (noting that "[the petitioner's] claims under the Convention Against Torture are based on the same statements . . . that the BIA determined to be not credible").

## IV

For the foregoing reasons, the petition for review is

DENIED.