WALLACE, Circuit Judge, dissenting in part; The Immigration and Nationality Act does not define “persecution.” Instead, the federal judiciary over time has developed legal standards to police the line between discrimination and harassment on the one hand, and persecution on the other. The line can be an amorphous one. But it is this lack of definitional clarity that makes our vigilance in policing the line all the more imperative. Because I fear the majority in this case has lowered the threshold for demonstrating persecution, I respectfully dissent. I. We have emphasized that persecution is “an extreme concept that does not include every sort of treatment our society regards as offensive.” Wakkary v. Holder, 558 F.3d 1049, 1059 (9th Cir. 2009) (citation omitted). “Discrimination on the basis of race or religion, as morally reprehensible as it may be, does not ordinarily amount to ‘persecution’ within the meaning of the Act.” Ghaly v. INS, 58 F.3d 1425, 1431 (9th Cir. 1995). Where a single incident does not rise to the level of persecution, we assess whether the cumulative effect of all, the mistreatment suffered by the petitioner compels a finding of persecution. See Krotova v. Gonzales, 416 F.3d 1080, 1084-85 (9th Cir. 2005) (citation omitted). To reverse an IJ’s finding regarding persecution we must find that the evidence not only supports the contrary conclusion, but compels it. Nahrvani v. Gonzales, 399 F.3d 1148, 1151 (9th Cir. 2005) (citation omitted). Here, the majority concludes the record compels a finding of past persecution based upon the cumulative effect of the following: (1) “severe and regular attacks” endured by Lomtyeva, (2) police acquiescence in the face of some of these incidents, and (3) an episode in which a police officer uttered a threat to kill Lomtyeva and her fellow congregants. There is no disputing the deplorable nature of the mistreatment suffered by Lomtyeva. The record, however, does not compel the conclusion that Lomtyeva suffered persecution. A. The majority characterizes the harassment and mistreatment suffered by Lom-tyeva at the hands of private citizens as “severe and regular attacks.” I disagree with that characterization. Over several years, Lomtyeva was occasionally cursed at, spat upon, pushed (including one incident where she and friend were pushed down stairs), and refused medical treatment. But Lomtyeva was not subject to regular and constant physical attacks, as suggested by the majority. Nor did the level of violence she experienced rise to the level present in Krotova, the case upon which the majority seems to rely principally. In Krotova, the petitioner on two occasions was surrounded by groups of people who not only yelled slurs and threats at her, but also pushed, kicked, and punched her. Krotova, 416 F.3d at 1085-86. These attacks, in essence, were group assaults against an individual. Here, by 'contrast, the physical confrontations largely were not perpetrated by groups against Lom-tyeva individually, and did not involve punching or kicking. Although cursing at, spitting upon, and shoving an individual on account of her religious beliefs is morally objectionable, I do not think the incidents here rise to the level of “severe and regular attacks” that would compel a finding of persecution. B. Íhe police response to the mistreatment ered by Lomtyeva is no doubt lamentable. In the most serious incident, neighbors set fire to an SDA gathering place and the police responded by blaming the SDA congregants and telling them “not to bother [the police]” if they were not willing to attend the Orthodox Christian church. In another serious incident, the police responded to Lomtyeva’s complaints that she and fellow congregants were being verbally abused by telling them, “[I]f your neighbors don’t, kill you, we will come and kill you.” These episodes indicate the police acquiesced in, and actively engaged in, discrimination and harassment against Lom-tyeva and her fellow congregants. But these incidents, considered either alone or in combination with the other mistreatment suffered by Lomtyeva, do not compel a finding of persecution. First, although the fire incident is undoubtedly serious, it also was a single incident in which no person was killed or injured. The police may have been unresponsive, but they did not detain, arrest, or assault anyone. Lomtyeva and her fellow congregants continued to hold worship services elsewhere, and continued their proselytizing activities throughout the area. I raise these points not to suggest that persecution requires death, detention, or a complete inability to practice one’s religion. But where the police fail to respond adequately to an incident that neither involves injury, nor results in a serious restriction on religious practice, such failure does not constitute acquiescence in persecution. Compare Nagoulko v. INS, 333 F.3d 1012, 1014, 1016 (9th Cir. 2003) (concluding that the record did not compel of finding of past persecution where petitioner at times faced harassment and disruptions by the police during church services, but “was not prevented from practicing her religion”) with Krotova v. Gonzales, 416 F.3d 1080, 1084-85 (9th Cir. 2005) (concluding that the record compelled a finding of past persecution where police failed to respond to attacks of increasing frequency and severity that ultimately left petitioner and her small congregation “too frightened to continue to gather”). Second, while “death threats alone can constitute persecution,” Canales-Vargas v. Gonzales, 441 F.3d 739, 743-44 (9th Cir. 2006), the context in which the threat is made ultimately determines its persecuto-ry impact. Nahrvani, 399 F.3d at 1153-54. Here, a police officer verbally threatened Lomtyeva and her fellow congregants after Lomtyeva complained that she and her group were being verbally abused. However, the police never detained, arrested, .or physically harmed Lomtyeva or any member of her group. That is, the threat was not accompanied by, nor connected to, any act of violence or significant harm. Under these circumstances, the officer’s death threat does not add much to the record. Id. at 1153 (holding that the record did not compel a finding of persecution where the death threats received by petitioner “were anonymous, vague, and did not create a sense of immediate physical violence”). The threat was neither specific and menacing enough to be persecutory in and of itself, nor accompanied by violent confrontations with the police such that it could serve as compelling evidence of past persecution. See, e.g., Mashiri v. Ashcroft, 383 F.3d 1112, 1119-20 (9th Cir. 2004) (concluding that a death threat was compelling evidence of past persecution where it was “specific and menacing” and was accompanied by acts of violent vandalism and a near-confrontation with a threatening mob). In my view, the majority ascribes too much weight to what appears to be more loose talk than credible intent. C. In sum, I do not believe the cumulative effect of the mistreatment suffered by Lomtyeva compels a finding of past persecution. Although Lomtyeva was discriminated against, harassed, and mistreated because of her SDA religious beliefs, she never suffered significant physical violence, she was never attacked, beaten, detained, or arrested by the police, and she continued to worship regularly with her SDA congregants and proselytize throughout the area. On this record, the IJ was not compelled to find past persecution. Nagoulko, 333 F.3d at 1017-18 (concluding the record did not compel a finding of persecution where petitioner was harassed, discriminated against, pushed on a couple of occasions, and threatened with death, but was never beaten, detained, or prevented from practicing her religion). II. My colleagues also' conclude that Lorn--tyeva’s return trips to Ukraine after visiting her daughter in the United Kingdom do not rebut the presumption of a well-founded fear of persecution. As the discussion above makes clear, I disagree with the majority’s premise. In my view, the record does not compel a finding of past persecution and so there would be no presumption of a well-founded fear to rebut. The burden is Lomtyeva’s. Thus, even assuming the return trips could not rebut a presumption of a well-founded fear, the trips are certainly relevant in assessing whether Lomtyeva carried her burden to prove a well-founded fear absent the presumption. Loho v. Mukasey, 531 F.3d 1016, 1017-18 (9th Cir. 2008) (“It is well established in this court that an alien’s history of willingly returning to his or her home country militates against a finding of past persecution or a well-founded fear of future persecution.”). In this regard, the IJ properly weighed Lomtyeva’s stated return trips to Ukraine against her stated desire to avoid jeopardizing her daughter’s immigration status in the United Kingdom, Given that the return trips occurred during the period of the alleged persecutory acts, the IJ had substantial evidence to conclude that the trips undermined her claim of a well-founded fear. The record does not compel a contrary conclusion, III. This is a close case. I certainly sympathize with Lomtyeva and decry the mistreatment she suffered. But our capacity for sympathy does not dictate the legal inquiry. Instead, we must consider whether the extremity of the mistreatment suffered by the petitioner, viewed in the aggregate, compels a finding of persecution. This is a high bar that I would hold was not met in this case. Although the IJ may have been justified in finding that Lomtye-va suffered persecution, the record does not compel that conclusion. Therefore, the petition for review should be denied. I respectfully dissent.