**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 13 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RAM BAHADUR GURUNG,<br><br>      Petitioner,<br><br> v.<br><br>WILLIAM P. BARR, Attorney General,<br><br>      Respondent. | No.   15-71808<br><br>Agency No. A089-302-651<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 13, 2019
San Francisco, California

Before: THOMAS and IKUTA, Circuit Judges, and MOLLOY,[**] District Judge.

Ram Bahadur Gurung, a citizen of Nepal and former Gurkha[1] soldier,

petitions for review of a Board of Immigration Appeals ("BIA") decision denying

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

[1]  "A legacy of an imperial past," Gurkhas are Nepalese soldiers with special legal status serving in the British and Indian armies, as well as in Singapore's police force.

his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  We have jurisdiction under 8 U.S.C. § 1252(a).  We review for substantial evidence the BIA's denial of Gurung's claims.  *Garcia v. Holder*, 749 F.3d 785, 789 (9th Cir. 2014).  "Where, as here, the BIA agrees with the IJ's reasoning, we review both decisions."  *Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1293 (9th Cir. 2018).  The petition is granted on the limited grounds that the agency's adverse credibility determination was not supported by substantial evidence, which warrants reconsideration of Gurung's claim for withholding of removal.  It is denied in all other respects.

1.  Substantial evidence supports the BIA's determination that the November 2008 attack on Gurung's uncle did not amount to "changed circumstances which materially affect[ed] [Gurung's] eligibility for asylum."  *See* 8 U.S.C. § 1158(a)(2)(B), (D).  Because the facts underlying Gurung's claim of changed circumstance are not in dispute, we have jurisdiction to consider the merits of the BIA's determination.  *Vahora v. Holder*, 641 F.3d 1038, 1042 (9th Cir. 2011).  Gurung's uncle was attacked by Maoists because he also had been a Gurkha soldier and they wanted his support, funding, and training.  Those are the same threats that Gurung himself was subject to prior to leaving Nepal and are reflective of the broader Maoist feelings towards the Gurkha.  According to Gurung's statement, his uncle had been approached by Maoists "many times" with the same

2

demands. As a result, "changed circumstances" do not exist as to excuse Gurung's untimely asylum application.

2. Substantial evidence supports the BIA's conclusion that Gurung did not establish a past or a likelihood of future torture should he return to Nepal. It is insufficient to provide generalized evidence that torture has or is occurring, *see Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010), and there is no evidence that the authorities would acquiesce to torture, *Andrade-Garcia v. Lynch*, 828 F.3d 829, 836–37 (9th Cir. 2016). Recognizing that Gurung was physically assaulted,[2] the record does not compel the conclusion that the beating rose to the level of "severe pain or suffering" necessary for a torture finding. 8 C.F.R. § 208.18(a)(1). CAT protection is denied.

3. Because the BIA's adverse credibility determination is not supported by substantial evidence, Gurung's application for statutory withholding of removal is remanded to the agency to consider in the first instance the merits of his claims for past persecution and future fear.

In reviewing an adverse credibility determination, we review "the reasons explicitly identified by the BIA, and the reasoning articulated in the IJ's oral decision in support of those reasons." *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir.

---

[2] Both the IJ and the BIA incorrectly stated that Gurung had not been physically attacked. The government concedes this was error.

3

2014) (internal quotation marks omitted). The first basis for the adverse credibility finding was an alleged inconsistency about the seizure of Gurung's property in Nepal. The BIA overstated the distinction between the Maoists and the Youth Communist League ("YCL"), especially insofar as Gurung understood that distinction. Thus, the record compels the conclusion that there is no material inconsistency between Gurung's statements and those in the letter describing the seizure of his property. *See Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010) (noting that agency review "should recognize . . . the normal limits of human understanding").

The second basis for the adverse credibility finding was his voluntary return to Nepal in 2007. While "a petitioner's voluntary return may be considered in rendering an adverse credibility finding," *Loho v. Mukasey*, 531 F.3d 1016, 1018 (9th Cir. 2008), the BIA failed to address whether Gurung had control over his own travel documents, *see Ding v. Ashcroft*, 387 F.3d 1131, 1139–40 (9th Cir. 2004). It also failed to consider that Gurung returned to Kathmandu and not his home region, and that he left soon after the Maoists approached him in Kathmandu. Moreover, Gurung was not physically mistreated by the Maoists until March 2007. Because the BIA failed to consider "relevant evidence that tends to contravene a conclusion that a given factor undermines credibility," the adverse

credibility determination is not supported by substantial evidence. *See Shrestha*,

590 F.3d at 1044.

Because it is apparent from the record that the BIA listed all possible reasons

to support an adverse credibility determination and the record compels the opposite

conclusion, remand for further credibility findings is not necessary. *Soto-Olarte v.*

*Holder*, 555 F.3d 1089, 1095 (9th Cir. 2009). However, the agency is to consider

in the first instance the merits of Gurung's claim for statutory withholding of

removal.

**PETITION GRANTED IN PART and REMANDED for the limited**

**purpose of assessing Gurung's withholding of removal claim in light of a**

**favorable credibility finding. The remainder of the petition is DENIED.**

*Gurung v. Barr*, 15-71808
IKUTA, Circuit Judge, dissenting:

Only "the most extraordinary circumstances will justify overturning an adverse credibility determination." *Shrestha v. Holder*, 590 F.3d 1034, 1041 (9th Cir. 2010) (quoting *Jibril v. Gonzales*, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005)). Because there are no such extraordinary circumstances here, I dissent from the majority's conclusion to the contrary.

Under the applicable standard in this post-Real ID Act case, "a trier of fact may base a credibility determination" on the full range of factors relied on by a jury or finder of fact, including "the inherent plausibility of the applicant's or witness's account," as well as the consistency of the applicant's statements "with other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(iii). Even minor inconsistencies may have an impact on credibility; only "trivial inconsistencies that under the total circumstances have no bearing on a petitioner's veracity" are inadequate bases for an adverse credibility determination. *Shrestha*, 590 F.3d at 1044; *see id.* at 1044 (explaining that a "trivial error" would be like "a misspelling").

Here, the IJ identified two bases for his adverse credibility determination, both of which are supported by substantial evidence.

First, Gurung claimed he was entitled to asylum based on his fear of

persecution by the Maoist Nepal Communist Party.  In support of this claim,

Gurung testified that the Maoists took the land where his house was located.  But

this testimony was inconsistent with a letter from the Human Rights Network

(HRN), submitted by Gurung, which stated that Gurung's "property was grabbed

by the Young Communist League (YCL)."  In response to questioning about this

inconsistency, Gurung insisted that YCL did not take his property:

> Q: Did YCL ever grab your property?
> A: No.
> Q: Are you sure?
> A: Yes.
>
> Q: Are you saying now that YCL did grab your property?
> A: No.
>
> Q: So just to be sure, did the YCL grab your property or did they not grab your property?
> A: No, not YCL, Maoists.

When given an opportunity to explain the inconsistency between his

testimony and the HRN letter he had submitted, Gurung offered a jumble of

explanations, including: that his parents were old and could not protect his property

(a non sequitur); that he didn't know what the HRN was thinking, but the YCL is

the younger generation of the Maoists and they "do the same work"; and that the

YCL had taken property contiguous to Gurung's property, so HRN may have

2

mistakenly thought the YCL had also taken Gurung's property.

The plain contradiction between Gurung's testimony and the HRN letter was far from trivial; it went to the heart of Gurung's claim. *See Shrestha*, 590 F.3d at 1043 (noting post-Real ID Act that "[i]nconsistencies no longer need to go to the heart of the petitioner's claim to form the basis of an adverse credibility determination") (internal quotation marks omitted). This contradiction, and Gurung's shifting and confusing explanations for it, are substantial evidence supporting the IJ's adverse credibility finding. 8 U.S.C. § 1158(b)(1)(B)(iii); *see Rizk v. Holder*, 629 F.3d 1083, 1091 (9th Cir. 2011) (holding pre-Real ID Act that substantial evidence supports an adverse credibility determination where IJ gave petitioner "ample opportunity" to explain contradictions in his testimony and the explanations provided did not establish "that any reasonable adjudicator would be compelled to conclude that [petitioner] is credible") (internal quotation marks omitted). Instead of applying the correct standard, the majority rejects the IJ's adverse credibility determination based on its own factual finding that "there is no material inconsistency between Gurung's statements and those in the letter describing the seizure of his property." Maj. at 4. Of course, the difference between Gurung's statement that the Maoists, *not* the YCL, took his property and the HRN's statement that the YCL too his property is more than a mere scrivener's

3

error. "Because we must uphold the IJ's adverse credibility determination so long as even one basis is supported by substantial evidence," *Rizk*, 629 F.3d at 1088, the non-trivial contradiction that Gurung struggled to explain between his testimony and documents in the record requires us to uphold the IJ's determination.

The IJ also had a second basis for his adverse credibility determination: that Gurung's claims that he feared persecution at the hands of the Maoists were implausible given that he left Nepal only when he found a job and voluntarily returned to Nepal between jobs. This conclusion is also supported by substantial evidence. Gurung testified that he had been threatened twice by the Maoists in 2006, including a demand that he pay them 200,000 rupees within two weeks. To escape this threat, he decided to take a job working security on a cruise ship in Norway. Over the next five months, the cruise ship went to port in various countries, the last of which was Australia. During this period, Gurung did not pursue any form of asylum relief for the persecution he now claims he was fleeing. Rather, when his contract with the cruise ship ended in February 2007, Gurung flew from Australia to Nepal. Gurung was questioned about his failure to pursue asylum relief while he was safely outside Nepal:

> Q: Why did you return to Nepal in 2007, notwithstanding the two incidents that made you afraid to return to Nepal?
> A: Because I cannot stay in any country with the ship.

4

Q: What do you mean by that?
A: I was working on the ship and they had my passport and I couldn't just go.
Q: Which is more important to you, sir, protecting your career or protecting your life?
A: My life.

Although Gurung's counsel confirmed at oral argument that Gurung's cruise ship employer did not use any coercive means to keep him from leaving the ship—other than holding his passport until he was deposited at the airport to return to Nepal—Gurung nevertheless made no efforts or inquiries of any kind to stay in Australia.[1]

Gurung testified that after his return to Nepal, five Maoists tracked him down on March 9, 2007, beat him, and again demanded 200,000 rupees. At Gurung's request, the Maoists generously gave him two months to obtain the money. Although he now had his passport in hand, Gurung did not immediately leave Nepal; rather, he waited until April 15, 2007, after he secured yet another timely cruise ship contract. The IJ gave Gurung several opportunities to explain the coincidental nature of this timeline, i.e., that his escapes from and returns to Nepal were timed to coincide with his job offers and employment, but ultimately

---

[1] When asked why Gurung did not leave the ship he was guarding to seek asylum while it was at port in Australia, and explain to Australian officials that his employer was holding his passport, Gurung's counsel said Gurung's "responsibility as an employee" prevented him from doing so.

found the explanations implausible. According to the IJ, it was clear that Gurung's return to Nepal "was simply prompted by the end of his contract," and that Gurung waited to leave again until another contract came in.

The IJ's determination that Gurung was not credible because of the coincidences of Maoist threats and cruise ship contracts is supported by substantial evidence in the record. Nothing in the record forecloses the IJ's determination that Gurung's story lacks "inherent plausibility." 8 U.S.C. § 1158(b)(1)(B)(iii). Instead of considering the substantial evidence supporting the IJ's finding that Gurung's account of his travel was implausible, the majority identifies other facts in the record it apparently believes support Gurung's version of events. Of course, we have no business conducting a de novo review of an immigration hearing; we are limited to determining whether we are compelled to reverse the IJ's determination. *See Don v. Gonzales*, 476 F.3d 738, 743 (9th Cir. 2007) (rejecting "impermissible re-weighing of the evidence" when reviewing adverse credibility determinations).

As we have previously noted, "[t]he Supreme Court has repeatedly instructed us on the proper standard to apply when reviewing an immigration judge's adverse credibility determination," but we continue to flout it. *Jibril*, 423 F.3d at 1138. Because we are not compelled to overturn the agency's conclusion, I

dissent.