NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 30 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KAREN MANTACHIAN,<br><br>   Petitioner,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>   Respondent. | No.   18-70497<br>      18-73456<br><br>Agency No. A201-194-210<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 18, 2021
Pasadena, California

Before:  LINN,[**] BYBEE, and BENNETT, Circuit Judges.

Karen Mantachian is a native of Armenia and a citizen of Denmark.  He

petitions for review of two consolidated decisions of the Board of Immigration

Appeals ("BIA").  The BIA dismissed Mantachian's appeal from the denial of his

applications for asylum, withholding of removal, and Convention Against Torture

---

   [*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

   [**]   The Honorable Richard Linn, United States Circuit Judge for the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

("CAT") relief. The BIA later denied Mantachian's motion to reopen. Because the parties are familiar with the facts, we do not recount them here, except as necessary to provide context to our ruling. We have jurisdiction under 8 U.S.C. § 1252, and we deny both petitions.

Substantial evidence supports the BIA's finding that Mantachian abandoned his applications for relief and the Immigration Judge's ("IJ") adverse credibility determination that the BIA adopted. *See Budiono v. Lynch*, 837 F.3d 1042, 1046 (9th Cir. 2016) (factual findings); *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010) (adverse credibility determinations). Under this standard, we uphold the agency's findings "unless the evidence compels a contrary result." *Budiono*, 837 F.3d at 1046 (citation omitted).

The BIA found that Mantachian abandoned his applications for relief by leaving the United States without obtaining advance parole and then failing to provide "sufficient explanations to overcome the presumption of abandonment." "An applicant who leaves the United States without first obtaining advance parole under § 212.5(f) of this chapter shall be presumed to have abandoned his or her application under this section." 8 C.F.R. § 1208.8(a).[1] By using the word

---

[1] The BIA also correctly rejected Mantachian's argument that the regulation does not apply to him, finding that his second asylum application was a continuation of his first. *See In re M-A-F-*, 26 I. & N. Dec. 651, 655 (B.I.A. 2015) ("[A] subsequent application that merely clarifies or slightly alters the initial claim will generally not be considered a new application.").

"presumed," the regulation allows for the possibility of rebutting the presumption. *See United States v. Black*, 512 F.2d 864, 868 n.7 (9th Cir. 1975) (discussing the meaning of a legal presumption). Here, such rebuttal evidence would need to show the intent of retaining a claim of right or some interest. *Cf. A & W Smelter & Refiners, Inc. v. Clinton*, 146 F.3d 1107, 1111 (9th Cir. 1998) ("[Abandonment is] a term with a rich common law tradition. Property is abandoned when the owner intends to divest himself of all interest in it."); *see also Abandonment*, Black's Law Dictionary (7th ed. 1999) ("The relinquishing of a right or interest with the intention of never again claiming it.").

Substantial evidence supports the BIA's finding that Mantachian failed to rebut the presumption of abandonment. To pay for his voyage, Mantachian sold some of his belongings in the United States, as he acted on his desire to run away from his life and his problems. He left in search of personal refuge because of his marital issues. Mantachian failed to seek advance parole from federal authorities, and never contacted them while he lived in Spain. Only after his family came to Spain to encourage him to stop "be[ing] stupid" and come back to live with them did Mantachian return to the United States. That Mantachian eventually returned to the United States after five months abroad and renewed his asylum claim before his scheduled hearing does not compel the conclusion that he rebutted the presumption of abandoning his claim.

3

Substantial evidence also supports the IJ's adverse credibility determination, which the BIA adopted. And stripped of his discredited testimony, Mantachian cannot establish eligibility for any forms of relief irrespective of abandonment. *See Shrestha*, 590 F.3d at 1048–49. The IJ noted, and the BIA echoed, the implausibility of Mantachian's claim of persecution in Denmark based on his Armenian ethnicity and Christian religion, in large part because such treatment contradicted the State Department's country conditions report for Denmark in multiple ways. And both Mantachian's and his mother's version of events described no incidents against his mother, father, or grandfather based on their Armenian ethnicity.

The IJ and BIA also cited Mantachian's multiple voluntary returns to Denmark after the alleged incidents occurred. Voluntary returns "militate[] against a finding of past persecution or a well-founded fear of future persecution," and may be considered in a credibility determination. *Loho v. Mukasey*, 531 F.3d 1016, 1017–18 (9th Cir. 2008). Besides family vacations to Spain that all concluded with returns to Denmark, Mantachian and his family also returned to Denmark in 2008 after visiting the United States. Although Mantachian was a minor during the family vacations, he had turned eighteen by 2008. And despite a previous declaration that he lived in Spain from May 2010 to May 2011, Mantachian testified that he lived in both Spain and Denmark that year—meaning

4

he would have made additional returns to Denmark under one version of his story.

The IJ and BIA also noted that Mantachian embellished his story. Among the incidents Mantachian mentioned in both his second declaration and testimony that he omitted from his first declaration were: a fight with Nazis before leaving for a family vacation; an assault by two Nazis the day after he and his family met with the criminal investigator about their house fire; threatening phone calls he received two days after that meeting; a confrontation with Nazis at a youth club event; an assault by Nazis after school; and two more assaults by Turkish men. Mantachian's mother's initial declaration contained similar omissions that she included in her second declaration. By supplementing his initial story to materially augment his core allegations of persecution, Mantachian cast doubt on his credibility. *See Silva-Pereira v. Lynch*, 827 F.3d 1176, 1185 (9th Cir. 2016); *see also Zamanov v. Holder*, 649 F.3d 969, 974 (9th Cir. 2011) (upholding an adverse credibility determination where a "supplemental declaration and . . . testimony before the IJ tell a much different—and more compelling—story of persecution than [the] initial application and testimony"). The IJ and BIA also noted inconsistencies about whether Nazis were suspected to be involved in the house fire, whether Mantachian suffered harm from 2008 to 2011, whether his sister suffered harm, and whether Mantachian lived in Spain or Denmark from 2010 to 2011. Based on the evidence and the discrepancies within it, the record does not

compel a finding that Mantachian's testimony was credible.

Finally, Mantachian petitions for review of the BIA's denial of his motion to reopen, but he waived any challenge to this denial. "A motion to reopen will not be granted unless the respondent establishes a prima facie case of eligibility for the underlying relief sought." *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151 (9th Cir. 2010). The BIA denied Mantachian's motion because he failed to establish that the evidence he submitted, or substantially similar evidence, was unavailable and could not have been presented at his hearing. And the BIA separately noted that it was not persuaded that the supplemental evidence would likely change the outcome of Mantachian's removal proceedings. But because Mantachian did not address the prima facie case requirement in his opening brief, the issue is waived. *See Nguyen v. Barr*, 983 F.3d 1099, 1102 (9th Cir. 2020).

**PETITIONS DENIED.**