NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUN 9 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KAREN KARAPETYAN, AKA Hovanes Borozangyan; et al., | No. 17-71223 |
| Petitioners, | Agency Nos. A077-997-828 |
| v. | A202-098-283 |
| | A202-098-284 |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 7, 2022[**]
Pasadena, California

Before: M. SMITH, BADE, and VANDYKE, Circuit Judges.

Karen Karapetyan and Hermine Torosyan, husband and wife, and their

minor daughter petition for review of the Board of Immigration Appeals' ("BIA")

dismissal of their appeal from an Immigration Judge's ("IJ") denial of their

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. "We review the denial of asylum, withholding of removal and CAT claims for substantial evidence." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019). We review the agency's adverse credibility determinations for substantial evidence and apply the standards governing adverse credibility determinations under the REAL ID Act. *Shrestha v. Holder*, 590 F.3d 1034, 1039–40 (9th Cir. 2010); *see also Alam v. Garland*, 11 F.4th 1133, 1136–37 (9th Cir. 2021) (en banc). We deny the petition.

1. Considering the totality of the circumstances and all relevant factors, *Alam*, 11 F.4th at 1137, substantial evidence supports the agency's conclusion that Karapetyan and Torosyan did not testify credibly. The agency reasonably concluded that three aspects of Karapetyan's testimony were implausible. First, the agency found it implausible that Karapetyan and Torosyan were singled out for harm based on their political views because at least "half of the city population" supported the Armenian National Congress ("ANC"), and Karapetyan was merely one of those supporters, rather than an active member of the party. Petitioners argue that Karapetyan "stood out" from other ANC supporters, but when asked why he was targeted by members of the Republican party, Karapetyan simply stated that he "was collecting some votes" for an ANC candidate and admitted that

2

"many other people" did the same.

Second, the agency reasonably found it implausible that members of the Republican party started a fight with Karapetyan and Torosyan on election day in light of three news articles in the record. Petitioners insist that these articles "do not contradict, but rather support Mr. Karapetyan's testimony." Although Petitioners are correct that the articles suggest that voters were "pressured," "threatened," and "questioned," the articles focus primarily on vote buying and election fraud, and there is no indication that ANC supporters were subjected to violent acts on election day.

Third, the agency reasonably concluded that Karapetyan's week-long trip to Russia in April 2012 undermined his testimony that he experienced past harm in Armenia. *See Loho v. Mukasey*, 531 F.3d 1016, 1017–19 (9th Cir. 2008) (concluding a petitioner's voluntary return to her home country supported the IJ's adverse credibility finding). Petitioners maintain that in April 2012, Karapetyan "did not yet fear for his life to the point that he felt it necessary to permanently leave Armenia," but they point to nothing in the record that compels a finding that Karapetyan did not face increased pressure from government authorities until after his trip to Russia in April 2012. Thus, Karapetyan's implausible testimony supports the agency's adverse credibility determination. *See Jibril v. Gonzales*, 423 F.3d 1129, 1135 (9th Cir. 2005) ("[T]estimony that is 'implausible *in light of*

3

*the background evidence*' can support an adverse credibility finding." (citation omitted)).

Karapetyan's initial omission of his April 2012 travel also supports the agency's conclusion because it concerns "the events leading up to [his] departure" from Armenia. *See Zamanov v. Holder*, 649 F.3d 969, 973 (9th Cir. 2011). Petitioners try to minimize this point by arguing that Karapetyan submitted his passport to the IJ and did not hide the April 2012 trip. But this explanation is not persuasive enough to compel a conclusion that Karapetyan's omission was trivial. *Cf. Loho*, 531 F.3d at 1018–19.

We likewise reject Karapetyan's contention that he was not afforded an adequate opportunity to explain his April 2012 travel. The IJ questioned Karapetyan about the passport stamp and asked him where and why he traveled to Russia in April 2012. Moreover, on direct examination, Karapetyan was asked twice about his family's experiences after the February 2012 election. *See Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011) ("[T]he opportunity to explain may be provided through . . . direct examination by the alien's own attorney, not just through a colloquy between the alien and the IJ." (citations omitted)), *overruled on other grounds by Alam*, 11 F.4th at 1135–37.

Petitioners do not contest the agency's reliance on the nonresponsive portions of Karapetyan's testimony. *See Iman v. Barr*, 972 F.3d 1058, 1065 (9th

4

Cir. 2020) ("[T]he agency may base an adverse credibility determination on an applicant's unresponsiveness."). Nor do Petitioners meaningfully challenge the agency's decision to accord limited weight to the certification of tax payment, certificate of registration, and photographs they submitted in support of their application. Petitioners thus waive review of these aspects of the adverse credibility finding. *See Singh v. Ashcroft*, 361 F.3d 1152, 1157 n.3 (9th Cir. 2004); *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996).

Finally, Petitioners contend that Torosyan corroborated Karapetyan's testimony and urge us to construe the BIA's "failure to affirm the IJ's adverse credibility [finding against] Mrs. Torosyan . . . as a concession that the IJ erred in finding [her] testimony not credible." Petitioners' contention ignores that the BIA cited *Matter of Burbano*, 20 I. & N. Dec. 872 (B.I.A. 1994), and did not disagree with the IJ's finding that Torosyan did not testify credibly. Thus, this aspect of the IJ's adverse credibility determination is part of the BIA's final decision, *see Abebe v. Gonzales*, 432 F.3d 1037, 1040–41 (9th Cir. 2005) (en banc), and the agency's finding that Torosyan did not testify credibly is supported by the same substantial evidence that supports the agency's determination that Karapetyan's testimony was not credible.

The remaining evidence is insufficient to compel a conclusion that Petitioners are eligible for asylum. Consequently, Petitioners "fail[] to carry the

greater burden of establishing eligibility for withholding of removal." *Wang v. Sessions*, 861 F.3d 1003, 1009 (9th Cir. 2017).

2. Substantial evidence supports the agency's denial of CAT relief. Petitioners' CAT claim was based on the same testimony the agency found not credible, and Petitioners' remaining evidence—a few paragraphs from the Country Report on Human Rights Practices for Armenia—does not compel a conclusion that it is more likely than not that Petitioners will be tortured if returned to Armenia. *Cf. Jiang v. Holder*, 754 F.3d 733, 740–41 (9th Cir. 2014) ("[B]y itself, the Country Report is insufficient to compel the conclusion that *Petitioner* would be tortured if returned [to the country of removal]."), *overruled on other grounds by Alam*, 11 F.4th at 1135–37; *Almaghzar v. Gonzales*, 457 F.3d 915, 922–23 (9th Cir. 2006) (same).

**PETITION FOR REVIEW DENIED**.